UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SCOTT A.,                                                    Case No. 6:21-cv-01676-AR

                  Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

_____

**ARMISTEAD, Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Scott A. (his last name omitted for privacy) challenges the Administrative Law

Judge's (ALJ) evaluation by failing to identify specific, clear and convincing reasons for

discounting his subjective symptom testimony. The court agrees with plaintiff and therefore reverses and remands the Commissioner's decision.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on December 3, 2018, initially alleging disability beginning May 1, 2014. (Tr. 228, 235.) His claims were initially denied on April 5, 2019, and again upon reconsideration on January 21, 2020. (Tr. 150, 155, 161, 164.) Afterwards, plaintiff asked for a hearing, which was held before the ALJ on January 15, 2021. (Tr. 50.) Before the hearing, on November 16, 2020, plaintiff amended his alleged onset date to June 8, 2018. (Tr. 263.)

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff has not engaged in substantial gainful activity since the amended alleged onset date. (Tr. 18.) At step two, the ALJ determined that he had the following severe impairments: chronic obstructive pulmonary disease (COPD), major depressive disorder, and posttraumatic stress disorder (PTSD). (Tr. 18.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 18.)

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC),

20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform a full

range of work at all exertional levels with the following nonexertional limitations: avoid all

exposure to pulmonary irritants; [he] can understand, remember, carry out, and persist at simple,

routine, repetitive tasks (can apply commonsense understanding to carry out detailed but

uninvolved instructions, meaning unskilled work that has a reasoning level consistent with 2 or

less); can make simple work-related decisions, perform work with few if any changes in the

workplace, and no assembly line pace work; and can have occasional contact with coworkers and

the general public. (Tr. 20.)

At step four, the ALJ determined that plaintiff cannot perform past relevant work as a

radiographer. (Tr. 22.) In light of his RFC, the ALJ found at step five that jobs exist in significant

numbers in the national economy that plaintiff can perform, including such representative

occupations as hand packager, blender (bakery goods), and bench assembler. (Tr. 23.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

and citation omitted). To determine whether substantial evidence exists, the court must weigh all

the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v.

Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

A.    ***The ALJ Failed to Identify Specific, Clear and Convincing Reasons to Discount Plaintiff's Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that he cannot engage in full time, competitive employment because of his mental and physical health conditions, including severe major depressive disorder, PTSD, COPD, hypertension, and memory issues. (Tr. 276.) In his view, his suicidal thoughts, PTSD, and depression, combined with his difficulty concentrating makes following directions impossible. (Tr. 295.) Stressful situations also cause his mental processes to deteriorate, which can lead to him shutting down. (Tr. 295.) He also feels disconnected from his body and gets off track without being able to find his way back. (Tr. 295.) Plaintiff also suffers from nightmares, resulting in lack of sleep. (Tr. 296.) Plaintiff has been engaged in counseling since his amended alleged onset date of June 2018 and has been on a variety of medications for his symptoms,

including Mirtazapine, Trintellix, Prazosin, Hydroxyzine, Oxcarbazepine, and Loratadine. (Tr. 385.)

At the hearing, plaintiff reported being physically limited with how long he can do any type of work because of his mental health. (Tr. 58.) Plaintiff explained that he no longer has the stamina to drive to work, perform work functions for the standard amount of time, and then drive home at the end of the day. (Tr. 58.) Plaintiff further explained that his anxiety revolving around going out in public and being expected to complete tasks prevent him from working. (Tr. 59.) Physically, plaintiff clarified that he is limited by his COPD and asthma, resulting in him having difficulty breathing when exerting himself, including walking from his car to the grocery store entrance. (Tr. 59.) Plaintiff also reported that exposure to any sort fragrance exacerbates his COPD. (Tr. 60.) Regarding his mental health, Plaintiff explained that he believes he has improved since his amended alleged onset date of June 2018, but that some aspects have worsened. And, although he no longer thinks of killing himself every day, his anxiety "and everything" has only gotten worse since COVID. (Tr. 63.) His medications also don't completely take away his nightmares or his panic attacks, and his panic attacks can be triggered by going out in public, where he will often have someone, like his landlord, accompanying him for things like grocery shopping or picking up his medications. (Tr. 63.)

Plaintiff challenges the ALJ's assessment of his subjective symptom testimony. The ALJ discounted plaintiff's subjective symptom testimony based on inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Page 5  – OPINION AND ORDER

In her decision, the ALJ cited several instances of inconsistent statements, such as plaintiff reportedly suffering from nightmares and lack of sleep, only to then report he was sleeping long hours and sleeping well, with Epworth Sleepiness Scale scores in the normal range. (Tr. 21, citing Tr. 296, 506, 597, 544, 1027.) Plaintiff argues that the ALJ selectively picked information unrepresentative of his suffering. (Pl's. Br. 8, ECF 16.) However, a review of the record shows that, although plaintiff suffered from nightmares and lack of sleep due to anxiety in June 2018, plaintiff reported two months later that his nightmares and sleep were improving. (Tr. 360, 385.) In fact, plaintiff reported a steady lessening of nightmares and better quality sleep for longer hours with medication from August 2018 until his last report on record in June 2020. (Tr. 360, 367, 373, 551, 559, 569, 576, 581, 587, 597.) Plaintiff also had two setbacks during this period. First, at the end of March 2019, he was forced to move to a hotel because a storm caused his water and electricity to cut off for two weeks. That led to an altercation with his roommate, which exacerbated his anxiety and brought back his nightmares. (Tr. 470, 508.) Plaintiff also acknowledged that he could have handled the situation more effectively. (Tr. 508.) The second setback was in May 2020 when plaintiff expressed that "COVID plays heavily on me." (Tr. 592.) However, he also reported only having mild nightmares and sleeping for nine hours a night. (Tr. 592.)

The ALJ also cited inconsistent reports about medication side effects as a reason for discounting plaintiff's subjective symptom testimony. (Tr. 21, citing Tr. 373, 379.) Plaintiff argues that the ALJ only considered selective treatment notes and that those reports were taken out of context. Specifically, plaintiff argues that he reported not experiencing adverse effects because of an increase in medication, while the "brain fog" was reported as lessened rather than

none. (Pl's. Br. 9, ECF 16.) A review of the record shows plaintiff reported he did not "feel *as* groggy" and that he did not experience "*heavy* brain fog" like he would "with other antidepressants." (Tr. 373, 379.) (emphasis added.) Given the full context, this court agrees with plaintiff.

The ALJ also cites declining changes in medication or dosages as an inconsistency since it suggested adequate control of symptoms. (Tr. 21, citing Tr. 551, 581, 585, 592.) Plaintiff argues that this does not show an adequate control of symptoms because plaintiff also agreed to some changes in medication as well as light therapy. (Pl's. Br. 9, ECF 16.) The court agrees with plaintiff. In the same reports on which the ALJ relies, plaintiff agreed to an increase in Mirtazapine, declined light therapy because he could not afford it, and declined adding Trileptal but "will consider if agitation and lability return." (Tr. 551, 587, 598.) Plaintiff also agreed to an increase in Prazosin around the same time. (Tr. 569.)

Lastly, the ALJ cited plaintiff's self-reports of the level and severity of his anxiety and depression as inconsistent with what plaintiff reported on his medical records. (Tr. 21.) The ALJ noted several instances of plaintiff reporting his depression and anxiety in the mild and low-moderate range on the Patient Health Questionnaire and Generalized Anxiety Disorder Questionnaire, with his presentation as intermittently anxious or with blunted affect, while on many occasions his mood and affect were normal or within normal limits. (Tr. 21, citing Tr. 360, 367, 379, 429, 443, 449, 479, 481, 506, 511, 550, 561, 570, 593, 900, 1018, 1037.) Plaintiff does not argue that this finding is insufficient. Even if plaintiff did, the court agrees with the ALJ's assessment. Reviewing the record as a whole shows a sustained pattern of improvement on medication and therapy, thereby undermining plaintiff's reports of their severity. Although

plaintiff reported being depressed and sad in August 2018 due to his social security application being denied, plaintiff also reported feeling "significantly better with less depression," mood "satisfactory," and irritability significantly better and "pretty level." (Tr. 360, 367.) This report began a trend of continued and gradual improvement of plaintiff's moods and anxiety over the course of almost two years, from August 2018 to June 2020, with only occasional scratching at his scalp because of his anxiety. (Tr. 360, 367, 373, 551, 559, 569, 576, 581, 587, 597.) While plaintiff suffered a setback in May of 2020 due to "COVID play[ing] heavily on me," he reported doing much better the following month after having had time to cope. (Tr. 592, 597.)

The ALJ was justified in relying on plaintiff's inconsistent statements regarding nightmares, sleep, anxiety, and depression as a basis to discount those portions of plaintiff's subjective symptom testimony. The record shows that the ALJ's assessment is reasonable with each reason supported by substantial evidence. However, the ALJ was not justified in relying on changes in medication and dosages. Unfortunately, the analysis cannot end here.

While the ALJ properly relied on inconsistencies between the medical record and the subjective symptom testimony, the ALJ erred because these inconsistencies served as the only reason for discounting plaintiff's subjective symptom testimony. Because inconsistencies between the subjective symptom testimony and the medical records served as the sole basis for the ALJ's assessment, this constitutes harmful error. *See Bray*, 554 F.3d at 1227.

The last related issue, as pointed out by plaintiff, is the ALJ's failure to address certain aspects of his symptom testimony at the hearing and in his function report. (Pl's. Br. 8–10, ECF 16.) Specifically, plaintiff reported that his anxiety reduces his stamina, which limits his ability to work full-time; that when stressed his anxiety causes his mental functions to deteriorate and

result in him shutting down; that he has problems with his memory; that he gets off track and struggles to get back on track; and that 85 percent of the time he needs someone to accompany him to the store for groceries and medications because of how his anxiety affects him when in public spaces. (Tr. 58–59, 63, 295, 299.) Although the ALJ addressed some of what plaintiff reported in his function report, the ALJ neither mentioned anything said at his hearing nor any of the things listed above that would affect his ability to remain competitive in the work force. Furthermore, the ALJ failed to "specifically identify" the parts of this testimony that she found not credible. Without that specific identification, the ALJ could not have, nor did she, "link" such testimony to contradictory evidence in the record. That is error under the specific, clear and convincing requirement. *See Brown-Hunter*, 806 F.3d at 489 ("[W]e require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.) While "the agency's pathway may reasonably be discerned, even if the agency explains its decision with less-than-ideal clarity," providing no explanation at all leaves the court with no way to meaningfully review how the ALJ assessed these symptoms in her decision. *Id*. at 492.

In sum, the court concludes that because the ALJ impermissibly relied solely on inconsistencies between the plaintiff's subjective symptom testimony and the objective medical evidence to discount plaintiff's testimony, and the ALJ failed to provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, the ALJ erred.

/ / / / /

/ / / / /

**B.**     *Remedy*

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that an award for an immediate payment of benefits is appropriate because, were his testimony to be fully credited as true, he would be entitled to a finding that he cannot sustain full-time competitive work. The court disagrees.

Remanding for further proceedings is the proper course here because the ALJ failed to adequately explain why she discounted plaintiff's testimony, and outstanding issues in the record remain that the ALJ must resolve, including why parts of plaintiff's testimony that would undoubtedly affect his ability to work were simply left unaddressed. *See Bradshaw v. Colvin*, 642 F. App'x 677m 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately

explain why he rejected certain evidence, and that the error was nor harmless, we vacate and [exercise our discretion to] remand for further proceedings."); *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made."). On remand, the Commissioner must purchase a consultative psychodiagnostic examination to assess plaintiff's functional limitations arising from his mental health impairments, and reassess plaintiff's subjective symptom testimony and either accept the limitations described therein or provide specific, clear and convincing reasons for their rejection.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS for further administrative proceedings.

ORDERED on June 5, 2023.

_____
JEFF ARMISTEAD
United States Magistrate Judge